**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ALMON OGLETREE,
     Petitioner,                        Civil No. 2:07-CV-14486
                                        HONORABLE GEORGE CARAM STEEH
v.                                UNITED STATES DISTRICT JUDGE

RAYMOND BOOKER,

     Respondent,
_____/

**OPINION AND ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS**

Almon Ogletree, ("petitioner"), presently confined at the Ryan Correctional

Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  In his application, filed by attorney Aaron

Ogletree, petitioner challenges his conviction for second-degree murder, M.C.L.A.

750.317; and felony-firearm, M.C.L.A. 750.227b.  For the reasons stated below,

petitioner's application for writ of habeas corpus is **DENIED.**

**I.  Background**

Petitioner was originally charged with first-degree felony murder, felony-

firearm, and being a felon in possession of a firearm.  At a first trial, petitioner was

convicted of being a felon in possession of a firearm, but the jury could not reach

a verdict as to the first two counts.  After a second trial, petitioner was found guilty

of the lesser included offense of second-degree murder and guilty as charged of

felony-firearm.

1

This Court recites verbatim the relevant facts regarding petitioner's

conviction from the Michigan Court of Appeals' opinion affirming his conviction,

which are presumed correct on habeas review. *See Long v. Stovall,* 450 F. Supp.

2d 746, 749 (E.D. Mich. 2006):

> This case involves what appears to be a drug deal gone bad. On July 2, 2000, defendant and his acquaintance, Eric Skinner, arranged to meet the victim to buy marijuana. At some point during the meeting, Skinner and the victim began to argue over the price, and when it appeared that the victim was going to pull out a gun, defendant and Skinner fled. While in flight, defendant pulled out a gun and shot at the victim, killing him.
>
> Defendant was arrested for the shooting on January 16, 2001. After his arrest, defendant made several statements to the police. Before trial, defendant moved to suppress his custodial statements. The trial court denied the motion to suppress, finding that defendant voluntarily made the statements and voluntarily waived his right to an attorney.
>
> Defendant first made a statement to Officer Gerald Packard. Before making the statement, defendant was read his constitutional rights and he signed a constitutional rights form. In this statement, defendant denied any involvement in the shooting and claimed that he did not know the victim. Defendant's second statement occurred at approximately 4:00 a.m. on January 17, 2001, and was made to Officer Barbara Simon. Before making this written statement, defendant was again read his constitutional rights and defendant signed the constitutional rights form. In this statement, defendant admitted some involvement in the drug deal, but claimed that Skinner was the one who shot the victim. Defendant made a third statement to Officer Derryck Thomas at approximately 2:20 p.m. on January 17, 2001, and in this statement, defendant admitted that he shot the victim.
>
> In this last statement, defendant admitted that on the day of the shooting, he got a telephone call from Skinner, who asked where he could purchase a large quantity of marijuana. Defendant arranged a meeting for later that day between himself, Skinner and the victim. That evening, he and Skinner met with the victim and Skinner got into

2

the victim's car to make the purchase.  When the two began arguing about price, Skinner got out of the car and the victim acted as though he was grabbing for a gun.  Defendant and Skinner began running and defendant pulled a gun out of his pocket and fired a shot at the victim.  The victim then pulled off down the street and ran his car into a tree.  Defendant and Skinner got back into Skinner's car and drove over to the victim's car.  They pulled the victim out of the car and dragged him to the grass and then left.

After defendant's arrest and sometime between defendant's statements, at approximately 3:30 a.m. on January 17, 2001, defendant's sister contacted Shirley Titus, a licensed attorney, to represent defendant.  Titus claimed that she attempted to contact the Task Force Office several times to speak with officers regarding defendant's case, but could not get through to anyone.  She then called the front desk at the First Precinct and spoke to an officer who could not locate any information about defendant.  After several more failed attempts at calling the Task Force Office, at about 6:00 a.m., Titus spoke with someone who informed her that the officers she was looking for had left for the day, but that she should try calling back after 7:00 a.m.  Titus called back at 7:30 a.m., and spoke with someone from the Violent Crimes Task Force who told her that defendant's case had been turned over to Officer Thomas and that she could go down to the precinct and speak with him at 8:00 a.m.  When Titus arrived at the precinct, she met with an officer who went over defendant's file with her and told her that defendant would be arraigned either that day or the next day. Titus then met with defendant for about twenty to thirty minutes.
*People v. Olgetree(sic),* No. 240339, * 1-2 (Mich.Ct.App. September 23, 2003).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 470 Mich. 873

(2004)(Kelly, J. would remand the case to the Court of Appeals to determine whether

the alleged error was outcome determinative).

Petitioner then filed a post-conviction motion for relief from judgment, which

was denied. *People v. Ogletree,* No. 01-2130-01 (Wayne County Circuit Court, July

14, 2005); *rehearing den.* August 25, 2005.  The Michigan appellate courts denied

petitioner's post-conviction appeal. *People v. Ogletree,* No. 271640 (Mich.Ct.App.

January 31, 2007); *lv. den.* 479 Mich. 861 (2007).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I.  The trial court violated the Fifth and Sixth Amendment by admitting
Mr. Ogletree's second statements as evidence against Mr. Ogletree.

II.  Whether the trial judge improperly injected issues greater than guilt
or innocence into the proceedings by analogizing the defendant's
situation to Osama Bin Laden and the September 11, 2001 attacks on
the United States.  As such, defendant was denied a fair and impartial
trial.

III.  The trial court committed reversible error in failing to instruct the
jury on the lesser included offense of manslaughter, thereby denying
defendant the right to due process pursuant to US Const Ams V, XIV,
Mich.Const. 1963, Art. 1, Sec. 1.

## II.  Standard of Review

28 U.S.C. §2254(d) imposes the following standard of review for habeas
cases:

An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be
granted with respect to any claim that was adjudicated on the merits
in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the
Supreme Court of the United States; or

(2)     resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

4

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

#### A.  Claim # 1.  The *Miranda* waiver claim.

Petitioner first claims that the trial court erred in refusing to suppress the two incriminating custodial statements that he made to the police, because they were taken in violation of his right to silence and his right to counsel.

An evidentiary hearing was conducted on petitioner's motion to suppress his custodial statements on June 8, 2001.  Officer Gerald Packard testified at the hearing that he arrested petitioner on January 16, 2001 at approximately 5:45 p.m., and read him his constitutional rights.  After petitioner was transported to the police station, he was read his rights again and he signed a written waiver of his rights.  According to Packard, petitioner was cooperative and never

requested counsel.  Petitioner denied knowing anything about the murder and even volunteered to take a polygraph examination.  Packard arranged for a polygraph that evening and transported petitioner back to the station at approximately 11:00 p.m. after the examination concluded.  After Packard informed petitioner of the results of the polygraph, petitioner still denied any involvement in the shooting.  Packard then turned petitioner over to Investigator Barbara Simon of the Homicide Section.  Officer Packard testified that he received no telephone calls or messages from anyone who was trying to contact petitioner during this time.

Investigator Simon testified that she also read petitioner his *Miranda* rights when she met with him at approximately 4:00 a.m. on January 17, 2001. Petitioner told Simon that he understood each right and he initialed and signed a written waiver of constitutional rights.  Petitioner told Simon that would speak to her.  Simon testified that petitioner never requested an attorney.  Simon spoke to petitioner for one-to-two hours, after which time petitioner signed a written statement.  Simon testified that she never received any calls regarding petitioner during this time, nor did she receive any calls from an attorney.  Simon then discussed petitioner's case with Officer Derryck Thomas at approximately 8:00 a.m.

Officer Thomas interviewed Petitioner at 2:20 p.m. on January 17, 2001. Thomas advised petitioner of his *Miranda* rights.  Officer Thomas testified that

petitioner read each right aloud, informed Thomas that he understood the rights, and initialed the written waiver of rights form.  Thomas testified that petitioner never asked for a lawyer and never told Officer Thomas that he did not want to speak to him.  Thomas testified that petitioner never said that he had talked to a lawyer.  Officer Thomas and petitioner discussed petitioner's first statement, after which petitioner then made an additional statement.

Attorney Shirley Titus testified that she received a call from petitioner's sister between 3:30 and 4:00 a.m. Titus initially testified that she received the call on January 18th, but later said that she thought it was on the 17th.  After receiving the phone call, Titus called the Violent Crimes Task Force two or three times, but no one answered the phone.  At 4:00 or 4:30 a.m., she called petitioner's family to obtain more information.  Titus then called the front desk of the 1st Precinct and spoke to an officer who tried to help her, but he had no information about petitioner.  Titus then called the Major Crimes Section, but no one answered the phone.  After obtaining the phone number for the Violent Crimes Task Force, Titus spoke to an officer from that unit at about 6:00 a.m. The officer informed Titus that Officers Packard and Irons had left for the day and advised her to call back at 7:00.  Titus called the Violent Crimes Task Force at about 7:30 and spoke to an officer who informed her that petitioner's case had been turned over to Officer Thomas.  Titus was advised that she could meet with Thomas at 8:00 a.m.  Titus testified that she went to the police station at 8:00

a.m. and met with Officer "Hassack" from the homicide division.  Hassack reviewed the police file and advised Titus that petitioner would probably be arraigned later that day or the next day.  The officer informed Titus that she could meet with petitioner.  Titus subsequently met with petitioner, at which time she spoke with him for twenty or thirty minutes.  Petitioner spoke with Titus about the polygraph and told her that he had talked to the police.  Petitioner informed Titus that he had spoken to a "lady" and "had spoken with" or "had contact with Derryck Thomas."

In rejecting petitioner's claim, the Michigan Court of Appeals indicated that there was no evidence in the present case that either Officer Simon or Officer Thomas was aware at the time they took petitioner's two statements that counsel had been retained to represent petitioner or that counsel had attempted to contact petitioner before he made the statements.  The Michigan Court of Appeals noted that when petitioner first made statements, Titus had not even spoken to anyone at the police precinct.  Further, Titus' own testimony revealed that the officers she spoke with were cooperative and allowed her to see petitioner almost immediately after she arrived at the police station.  Additionally, Officers Simon and Thomas testified, without dispute from petitioner, that petitioner never requested a lawyer.  While Titus' testimony suggested that she met with petitioner before he gave his last statement to Officer Thomas, the Michigan Court of Appeals noted that there was no dispute that before the

statement was made, Thomas read petitioner his constitutional rights, and there

was nothing in the record to indicate that petitioner requested an attorney.

Petitioner had been informed of his constitutional rights on several occasions,

had indicated that he understood those rights, and voluntarily waived his rights.

Therefore, the trial court did not err in denying petitioner's motion to suppress

the custodial statements. *Olgetree,* Slip. Op. at * 2-3.

A prosecutor may not use a defendant's statements which stem from

custodial interrogation unless the prosecutor can demonstrate the use of

procedural safeguards which are effective to secure a defendant's privilege

against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966).  Unless

other means are devised to inform a suspect of his right to silence and a

"continuous opportunity to exercise it", the following warnings are required to be

given to a suspect:

> 1. the person must be warned that he has a right to remain silent;
> 2. that any statement he does make may be used against him;
> 3. and that he has a right to the presence of an attorney, either
> appointed or retained.

*Miranda,* 384 U.S. at 444.

Petitioner claims that his first incriminating statement to Investigator Simon

should have been suppressed because the police failed to inform him that

counsel had been retained by his family and was attempting to contact him.  The

police are not required, as part of a criminal suspect's *Miranda* rights, to inform

9

the suspect of an attorney's efforts to reach him or to keep the suspect informed of the status of his legal representation. *Moran v. Burbine,* 475 U.S. 412, 425-28(1986).  In *Moran,* the Supreme Court held that the failure of the police to inform a murder suspect of telephone calls from an attorney, who had been contacted by the suspect's sister with regard to an unrelated breaking and entering charge, before continuing their interrogation of suspect, did not undermine the validity of the suspect's waiver of his *Miranda* rights, where the suspect was unaware that his sister had contacted attorney. *Id.* at 421-22.  The Supreme Court reasoned that: "[E]vents occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." *Id.*  Therefore, once it is determined by a court that a criminal suspect's decision to waive his *Miranda* rights was uncoerced, that he or she knew that he or she could remain silent and request a lawyer, and that the suspect was aware of the State's intention to use his or her statements to secure a conviction, "the analysis is complete and the waiver is valid as a matter of law." *Id.* at 422-23.

In the present case, both the trial and appellate courts determined that petitioner had been advised several times of his *Miranda* rights, had not asserted his right to remain silent nor invoked his right to the assistance of counsel, and had agreed to relinquish his rights and speak first with Investigator Simon and later with Officer Thomas.  In considering federal habeas petitions, a federal

district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); *Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 946 (E.D. Mich. 2003); 28 U.S.C. § 2254(e)(1).  A state court's finding that a habeas petitioner did not make an unequivocal request for counsel and that the statement was voluntarily made is entitled to the presumption of correctness, where the petitioner fails to present clear and convincing evidence to rebut that presumption. *See Pritchett v. Pitcher*, 117 F. 3d 959, 963 (6th Cir. 1997); *See also Walendzinski v. Renico,* 354 F. Supp. 2d 752, 759 (E.D. Mich. 2005).   In this case, petitioner has presented no evidence to rebut the state courts' factual findings that petitioner had been advised of his *Miranda* rights, had never asserted his right to silence or invoked his right to counsel, and agreed to speak with the officers.  The fact that the officers may not have informed petitioner that an attorney was trying to contact him would not render involuntary an otherwise valid waiver of his *Miranda* rights.

Petitioner's primary claim, however, is that his more incriminating statement to Officer Thomas should have been suppressed, because petitioner had invoked his right to counsel after speaking with Attorney Titus prior to making his statement to Officer Thomas.

As an initial matter, it is unclear whether petitioner made his statement to Officer Thomas before or after conferring with Titus.  Titus initially testified that

she received the call from petitioner's family on January 18th, which was after he had made his statement to Officer Thomas, although she later said that she thought it was on the 17th. When petitioner spoke to Titus, he informed her that he had he had spoken to a "lady" and "had spoken with" or "had contact with Derryck Thomas." This would seem to suggest that petitioner had spoken with counsel after confessing to Officer Thomas.

Nonetheless, assuming that petitioner spoke with Attorney Titus prior to speaking with Officer Thomas, this would not render his subsequent confession inadmissible. It is true that once an accused invokes his right to counsel during custodial interrogation, that interrogation must cease until counsel is made available, unless the accused initiates further conversation with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). However, the "[i]nvocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Davis v. United States*, 512 U.S. 452, 459 (1994) (*quoting McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). The suspect's statement "must unambiguously request counsel." *Id.* at 459. Additionally, "[u]nless the suspect actually requests an attorney, questioning may continue." *Id.* at 462. An "attorney's involvement [in a criminal case] does not serve to automatically invoke [a suspect's] right to counsel under *Miranda*, for *McNeil* still requires that there be an expression of the suspect's wish" for counsel. *United States v.*

*McKinley,* 84 F. 3d 904, 910 (7th Cir. 1996).

In the present case, even if petitioner met with counsel and discussed his case prior to petitioner making his confession to Officer Thomas, there was no testimony from anyone, including Titus, that petitioner desired to remain silent or to have Titus present when Officer Thomas questioned him.  The fact that petitioner conferred with an attorney prior to making an inculpatory statement during any subsequent interrogation is insufficient to amount to an invocation of his right to counsel, in the absence of any evidence that petitioner requested to speak with his attorney again, or indicated that he was not comfortable with the interrogation proceeding without counsel present. *See Cosby v. Sigler,* 435 F.3d 702, 707 (7th Cir. 2006).

In the present case, there is no indication that petitioner asserted his right to remain silent or his right to counsel when he spoke with Officer Thomas, nor is there any indication that either he or Ms. Titus asked that she be present while Officer Thomas interrogated petitioner.  Therefore, assuming that Officer Thomas spoke with petitioner after he conferred with counsel, this would not render his confession inadmissible under *Miranda* or *Edwards*.  Petitioner is not entitled to relief on his first claim.

**B.  Claim # 2.  The judicial misconduct claim.**

Petitioner next contends that he was denied a fair trial when the trial judge analogized petitioner's situation to Osama Bin Laden and the September 11,

2001 attacks. Respondent contends that petitioner's claim is procedurally

defaulted, because he failed to object to the judge's comments at trial and the

Michigan Court of Appeals relied on this failure to object in rejecting petitioner's

claim.

In rejecting petitioner's judicial misconduct claim, the Michigan Court of

Appeals noted that the issue was not preserved on appeal because petitioner

failed to object at trial and the court would therefore review petitioner's judicial

misconduct claim for plain error. *Ogletree,* Slip. Op. at * 3. After reviewing the

judge's comments, the Michigan Court of Appeals concluded that petitioner had

failed to establish the requisite plain error needed to overturn his conviction. *Id.*

When the state courts clearly and expressly rely on a valid state

procedural bar, federal habeas review is also barred unless petitioner can

demonstrate "cause" for the default and actual prejudice as a result of the

alleged constitutional violation, or can demonstrate that failure to consider the

claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*,

501 U.S. 722, 750-51 (1991). If a habeas petitioner fails to show cause for his

procedural default, it is unnecessary for the court to reach the prejudice issue.

*Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case,

where a constitutional error has probably resulted in the conviction of one who is

actually innocent, a federal court may consider the constitutional claims

presented even in the absence of a showing of cause for procedural default.

14

*Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a

claim of innocence requires a petitioner to support the allegations of

constitutional error with new reliable evidence that was not presented at trial.

*Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Actual innocence, which would permit

collateral review of a procedurally defaulted claim, means factual innocence, not

mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In this case, the Michigan Court of Appeals clearly indicated that by failing

to object at trial, petitioner had not preserved his judicial misconduct claim.  The

fact that the Michigan Court of Appeals engaged in plain error review of

petitioner's claim does not constitute a waiver of the state procedural default.

*See Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000).  Instead, this Court

should view the Michigan Court of Appeals' review of petitioner's claim for plain

error as enforcement of the procedural default. *See Hinkle v. Randle,* 271 F. 3d

239, 244 (6th Cir. 2001).  Petitioner's claim is procedurally defaulted.

Petitioner contends that any procedural default should be excused

because of trial counsel's ineffectiveness in failing to object to the judicial

misconduct.  For ineffective assistance of counsel to constitute cause to excuse

a procedural default, that claim itself must be exhausted in the state courts.

*Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Petitioner never raised an

ineffective assistance of counsel claim in the state courts on his direct appeal or

in his post-conviction motion.  Because petitioner never raised in the Michigan

courts a specific claim about trial counsel's failure to object to the alleged judicial

misconduct, the alleged ineffectiveness of counsel cannot constitute cause to

excuse petitioner's default with respect to his judicial misconduct claim. *See*

*Wolfe v. Bock,* 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006).  Because petitioner

has not demonstrated any cause for his procedural default, it is unnecessary to

reach the prejudice issue regarding his judicial misconduct claim. *Smith*, 477

U.S. at 533; See also *Harris v. Stegall,* 157 F. Supp. 2d 743, 750 (E.D. Mich.

2001).

Additionally, petitioner has not presented any new reliable evidence to

support any assertion of innocence which would allow this Court to consider his

claim as a ground for a writ of habeas corpus in spite of the procedural default.

Petitioner's contention that the miscarriage of justice exception should apply

because he is guilty, at most, of voluntary manslaughter, is simply a challenge to

the sufficiency of the evidence to convict him of second-degree murder.

However, any claim that the evidence was insufficient to convict petitioner of

second-degree murder would be insufficient to invoke the actual innocence

exception to the procedural default doctrine. *See Malcum v. Burt,* 276 F. Supp.

2d 664, 677 (E.D. Mich. 2003).  Because petitioner has not presented any new

reliable evidence that he is innocent of these crimes, a miscarriage of justice will

not occur if the Court declined to review petitioner's second claim on the merits.

*Harris v. Stegall,* 157 F. Supp. 2d at 751.  Petitioner's state procedural default

16

bars federal habeas review of his claim.

### C.  Claim # 3.  The lesser included offense claim.

Petitioner lastly contends that the trial court erred in refusing to instruct the

jurors on the lesser included offenses of voluntary manslaughter and involuntary

manslaughter.

The United States Supreme Court has declined to determine whether the

Due Process Clause requires that a state trial court instruct a jury on a lesser

included offense in a non-capital case. *See Adams v. Smith,* 280 F. Supp. 2d

704, 717 (E.D. Mich. 2003)(*citing to Beck v. Alabama,* 447 U.S. 625, 638, n. 4

(1980)).  Thus, a state trial court's failure to give the jury an instruction on a

lesser included offense in a non-capital case is not contrary to, or an

unreasonable application of, clearly established federal law as required for

federal habeas relief. *Id.  Beck* has been interpreted by the Sixth Circuit to mean

that "the [federal] Constitution does not require a lesser-included offense

instruction in non-capital cases." *Campbell v. Coyle,* 260 F. 3d 531, 541 (6th Cir.

2001).  Thus, the failure of a state trial court to instruct a jury on a lesser

included offense in a non-capital case is not an error cognizable in federal

habeas review. *Bagby v. Sowders*, 894 F. 2d 792, 797 (6th Cir. 1990); *See also*

*Scott v. Elo,* 302 F. 3d 598, 606 (6th Cir. 2002).

Petitioner contends that because he was originally charged with first-

degree felony murder, which carries a sentence of life imprisonment without

parole, petitioner was essentially facing a capital conviction and therefore was entitled to a jury instruction on several lesser included offenses, pursuant to the Supreme Court's holding in *Beck.*

The Court cannot accept petitioner's argument.  In *Scott v. Elo,* 302 F. 3d at 606, the Sixth Circuit held that a criminal defendant who had been convicted of first-degree murder in Michigan and had been sentenced to life imprisonment without parole was not entitled to habeas relief based upon the trial court's failure to instruct on the lesser offense of involuntary manslaughter.  In so ruling, the Sixth Circuit characterized the defendant's first-degree murder charge as being a conviction for a non-capital offense. *Id.*  Moreover, several other circuits have concluded that cases in which a defendant receives a sentence of life imprisonment without parole instead of the death penalty should be treated as a non-capital case, as opposed to a capital case, for determining whether due process requires that a trial court is required to instruct jurors on lesser included offenses. *Creel v. Johnson,* 162 F. 3d 385, 390 (5th Cir. 1998); *Pitts v. Lockhart,* 911 F. 2d 109, 112 (8th Cir. 1990)*; Rembert v. Dugger*, 842 F. 2d 301, 303 (11th Cir. 1988); *Trujillo v. Sullivan*, 815 F. 2d 597, 602 (10th Cir. 1987).  Accordingly, petitioner is not entitled to habeas relief on his third claim.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a

certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.*  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*  A federal district court may grant or deny a certificate of appealability when the court issues a

19

ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th

Cir. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a

certificate of appealability because he has failed to make a substantial showing

of the denial of a federal constitutional right.  Jurists of reason would not find this

Court's resolution of petitioner's claims to be debatable or that they should

receive encouragement to proceed further. *Myers v. Straub,* 159 F. Supp. 2d

621, 629 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of

Habeas Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

Dated:  May 13, 2009

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 13, 2009, by electronic and/or ordinary mail.

S/Marcia Beauchemin
Deputy Clerk

---